In re Mildred M. STUMP, Debtor.

Mildred M. STUMP, Plaintiff,

v.

The FIRST NATIONAL BANK OF SHELBY, et al., Defendants.

In re Rosanna M. STUMP, Debtor.

Rosanna M. STUMP, Plaintiff,

v.

The FIRST NATIONAL BANK OF SHELBY, et al., Defendants.

Bankruptcy Nos. 94–60417, 94–60418. Adv. Nos. 94–6121, 94–6120.

United States Bankruptcy Court, N.D. Ohio.

Dec. 22, 1995.

---

Charles Ewing, Hilliard, OH, for Debtor.

Thomas J. Budd, Ashland, OH, for plaintiff.

Leslie M. Singer, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC.

## MEMORANDUM OF DECISION

### JAMES H. WILLIAMS, Chief Judge.

Before the court are briefs filed by the United States in each of the above adversary proceedings, on behalf of its agency the Internal Revenue Service (IRS), supporting its claimed interest in certain proceeds of a state court partition sale. The First National Bank of Shelby (FNB), one of the defendants, filed a response to each brief which essentially supports the IRS' position but also argues that the IRS waived its right to assert its claim. The plaintiffs, Mildred M. Stump and Rosanna M. Stump (Plaintiffs), each filed a memorandum in opposition to the IRS' briefs. The court then took the matters under advisement.

## I.

### *FACTS*

Mildred M. Stump is married to James Michael Stump and has been his lawful wife at all times relevant to this matter. Rosanna M. Stump is married to Charles C. Stump and, likewise, has been his lawful wife at all times relevant to this matter. James Michael Stump, Charles C. Stump, Robert Stump and Leona M. Neff inherited two farms from their parents, Tom and Marie Stump, as tenants in common. Sometime after the inheritance, FNB obtained a judgment lien on the interests in the farms of James Michael Stump and Charles C. Stump in an amount exceeding $240,000.00 plus interest.

On April 10, 1991, a partition action was filed in Crawford County Common Pleas Court by Robert Stump and Leona M. Neff seeking to sell the two farms. The Plaintiffs were not made parties to that action. However, prior to the court-ordered partition sales of the two farms on August 20, 1993, the Plaintiffs requested protection of their respective dower rights in the proceeds of the sale. The sales of both farms produced total gross proceeds of $596,000.00.

The state court held $60,000.00 of the proceeds pending the resolution of the Plaintiffs' claim for dower. Before the issue was resolved, the Plaintiffs filed their respective petitions for relief under Chapter 12 of Title 11 of the United States Code. Because it was unaware of the pendency of the Plaintiffs' bankruptcy cases and believed that each had failed to brief the issue of her entitlement to dower, the state court ordered the distribution of the $60,000.00 to FNB. The Plaintiffs then filed the present actions in this court for turnover of the amount representing their respective dower rights in the properties. The Plaintiffs and FNB filed cross motions for summary judgment on the

dower issue, and on May 2, 1995, the court entered an order which held that the Plaintiffs were entitled to compensation for their loss of their respective dower rights. The determination of the amount to which each was entitled was reserved for a later date.

The IRS now claims a right to a portion of the proceeds of the partition sale by virtue of its assessments of estate taxes with respect to the estates of Tom and Marie Stump and its assessments made against the husbands of the Plaintiffs. Tom Stump died on June 20, 1979. The IRS assessed his estate for estate taxes on April 20, 1980 and again for additional estate taxes on April 5, 1982 after it conducted an audit. The IRS filed notice of its federal tax lien with respect to the tax liability of the estate of Tom Stump on March 24, 1994 in Crawford County, Ohio and on April 24, 1994 in Huron County, Ohio.

Marie Stump died on February 11, 1980. The IRS assessed her estate for estate taxes on February 12, 1981 and again for additional estate taxes on April 5, 1982 following its audit. The IRS also filed notices of its liens with respect to the tax liability of the estate of Marie Stump on March 24, 1994 in Crawford County, Ohio and on April 24, 1994 in Huron County, Ohio.

James Michael Stump and Charles C. Stump were assessed for trust fund taxes by the IRS on February 4, 1991. The IRS filed a notice of tax lien against James Michael Stump on November 15, 1991 and against Charles C. Stump on August 30, 1991. By virtue of these assessments, the IRS contends that its claim to the partition sale proceeds is superior to those of the Plaintiffs' claims of dower because those dower interests were inchoate at the time of the IRS' assessment. However, the IRS concedes that FNB's judgment lien is superior to the IRS' liens because at the time FNB's judgment lien arose, notice of the IRS' liens had not been filed.

FNB supports the IRS' position that the interests of the Plaintiffs are subordinate to the IRS' liens and agrees with the IRS' proposed resolution of the problem presented by the competing liens. However, FNB argues that the court should find that the IRS waived its right to assert any claim to the partition sale proceeds by virtue of its failure to respond to FNB's motion for summary judgment.

The Plaintiffs first argue that sufficient funds remain from the proceeds of the partition sale to satisfy the IRS' liens and compensate the Plaintiffs for the loss of their dower. The Plaintiffs also argue that the IRS is barred from asserting any claim to the partition proceeds because the state court determined that FNB held the first priority subject to the Plaintiffs' dower rights. That determination, the Plaintiffs note, was made in a proceeding in which the IRS was a party and the state court's decision has not been appealed.

## II.

### DISCUSSION

#### A.

■ The court has jurisdiction in this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

■ First, the court will address the issue of waiver, raised by FNB, which it argues resulted from the IRS' failure to respond to the motions for summary judgment on which the court has already ruled.

The summary judgment motions dealt only with the Plaintiffs' entitlement to compensation for the loss of dower. The court ruled that the Plaintiffs are entitled to such compensation, the amount to be determined at a future hearing, if necessary, and the IRS does not dispute that finding. What is presently at issue in this matter is the IRS' entitlement to a portion of the proceeds of the partition sale which, absent the court's determination that the Plaintiffs are entitled to compensation for the loss of their dower rights, would be subordinate to FNB's lien. Because this issue was not involved at the summary judgment stage, the court finds

that the IRS has not waived its right to assert its claim to the partition sale funds.

■ Next, the court will examine the Plaintiffs' argument that sufficient funds exist to satisfy the liens of both the IRS and FNB and also compensate the Plaintiffs for their loss of dower. If so, the court's determination of the relative priorities of the parties becomes a mere technicality, although not totally irrelevant. That all parties will be compensated does not relieve this court of its obligation to determine the relative priorities of the competing claims. In addition, it is at least questionable whether, in reality, sufficient funds to pay all of these parties exist. Therefore, the determination of the relative priorities of the parties could well have substantive significance.

■ The final preliminary issue with which the court must deal is the Plaintiffs' argument that the IRS is estopped or barred from asserting any claim to the partition proceeds because the state court, in an order which was not appealed, held that FNB held a first lien subject to the Plaintiffs' respective rights to dower. At the time the state court rendered its decision, the determination of whether, indeed, the Plaintiffs were entitled to dower had not been made. It is only as a result of this court's decision that the Plaintiffs are so entitled that the IRS has any claim which could be superior to those of the Plaintiffs. Absent the Plaintiffs' claims for dower, the IRS was resigned to standing in the distribution line behind FNB. Thus, the IRS is not barred or estopped from now claiming an interest in the proceeds of the partition sale.[1]

### B.

■ With these preliminary issues resolved, we turn to the relative priorities of the parties. This requires an analysis of the priority of each claim with respect to the others. Absent a contrary provision, priority for purposes of federal law is governed by the common-law principle that "the first in time is the first in right." *United State ex rel. Internal Revenue Service v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993). However, case law provides that a competing state lien is in existence for "first in time" purposes only when it has been "perfected" in the sense that "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Id.; In re Terwilligers Catering Plus, Inc.,* 911 F.2d 1168, 1176 (6th Cir. 1990), *cert. denied,* 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991).

■ Under *McDermott,* the IRS' lien has priority over the Plaintiffs' claims for compensation for their loss of dower rights because at the time the IRS filed its notice of tax lien, neither the amount nor the very existence of the Plaintiffs' dower claims had been determined and thus the claims were not "perfected." However, the IRS' assessments against the estates of Tom and Marie Stump and the husbands of the Plaintiffs do not have priority over FNB's judgment lien because, as the IRS concedes, notice of the IRS' tax liens had not been filed, pursuant to 26 U.S.C. § 6323(f), at the time FNB became a judgment lien creditor.[2] Finally, FNB does not dispute that the Plaintiffs' claims for dower have priority over FNB's lien.

As the IRS notes in its brief, this case represents a classic example of circular priorities. The Plaintiffs have claims to the partition sale proceeds which are superior to that of FNB. FNB has a claim to those same proceeds which is superior to those of the IRS. However, the IRS holds claims

---

**1.** The copy of the state court's order with which the court has been supplied refers to FNB's lien, "subject to determination of dower rights of the [Plaintiffs]." The same order fixes a briefing schedule for parties "proposing the existence of a dower right in the [Plaintiffs]." Such brief was to concern "the existence or non-existence of such dower interest ..."

The state court's order thus hardly amounts to a finding of the Plaintiffs' entitlement to dower.

**2.** Pursuant to 26 U.S.C. § 6322, a federal tax lien arises on the date the tax is assessed, but it is not valid against the particular classes of lienholders listed in Section 6323 until it has been properly filed. Section 6323(a) provides that notice of a federal tax lien must be filed before a competing creditor obtains a judgment lien for the tax lien to have priority over the competing creditor. 26 U.S.C. § 6323(a). Section 6323(a) thus represents a provision which can alter the rule in *McDermott.*

which are superior to those of the Plaintiffs. In *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), the United States Supreme Court established a rule for resolving circular priorities. That rule has been explained by other courts as follows:

> The problem of circular priorities is an anomaly that has resulted from imperfect coordination of state priorities with federal law.... The formula for reconciling circular priorities is found in *United States v. New Britain* [54-1 USTC ¶ 9191], 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). The amount of money that represents claims prior to the federal tax liens is set aside first. The federal tax liens are then paid out of the remaining amount. Finally, the sum of the amount set aside plus the amount remaining after payment of the federal tax liens is distributed to the state claimants in accordance with state priorities.

*Miller & Miller Auctioneers v. United States*, 79–2 U.S.Tax Cas. (CCH) ¶ 9630 (N.D.Tex. September 24, 1979); *see also Board of Education of Chicago v. Monticello Realty Corporation* (*In re McKee–Berger–Mansueto, Inc.*), 691 F.2d 828, 834 (7th Cir. 1982) (citing *New Britain*).

Using the *New Britain* analysis, (1) the amount of FNB's claim is set aside, (2) the IRS' lien is then satisfied using the remaining proceeds, (3) the amount set aside relating to FNB's claim, and the amount remaining after the IRS' lien is satisfied, is then used to compensate the Plaintiffs for their respective dower rights and (4) any remaining sums should be paid to FNB. Thus, FNB should turn over to the Plaintiffs funds sufficient to compensate them for their loss of their respective dower rights.[3] These funds must be paid from FNB's portion of the proceeds of the partition action.

3. Previously, FNB and the Plaintiffs agreed that the Plaintiffs were entitled to receive the following amounts as compensation for their respective dower claims: $26,402.16 for Rosanna M. Stump and $30,030.49 for Mildred M. Stump. Because these amounts were calculated using the

An order in accordance with the foregoing shall issue forthwith.

American Experience Table, no intent to substitute different amounts has been manifested by FNB or the Plaintiffs and the amount received by the IRS will not be affected based on the *New Britain* formula as applied above, the court will use these agreed upon amounts.